UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

David Phillips,                                           Civ. No. 20-2048 (PAM/DTS)

Plaintiff,

v.                                               **MEMORANDUM AND ORDER**

Aetna Life Insurance Company,

Defendant.

---

This matter is before the Court on the parties' cross-Motions for Summary Judgment. For the reasons that follow, Defendant's Motion is granted and Plaintiff's Motion is denied.

**BACKGROUND**

Plaintiff David Phillips worked for more than twenty years as a systems engineer at the Boeing Company in Missouri. In March 2019, Phillips was assaulted, suffering serious injuries that required hospitalization. He was eventually transferred to St. Louis University Hospital, where he was diagnosed with a subdural hematoma in his brain as well as an intraventricular hemorrhage in his right frontal lobe, in addition to physical injuries such as facial and rib fractures.

Shortly after the incident, Phillips applied for and received short-term disability benefits through the Boeing-sponsored short-term-disability plan, which is not administered by Defendant Aetna Life Insurance Company. In August 2019, Phillips applied for long-term-disability benefits from Boeing's Aetna-administered long-term-disability plan. According to Phillips, he continues to suffer from memory issues and

cognitive impairment that preclude him from returning to his job as a systems engineer.

The plan provides monthly benefits to participants who are "disabled and unable to work because of: [a]n illness; [a]n injury; or [a] disabling pregnancy-related condition." (Admin. R. (Docket No. 27) at 36.)[1]   Disability for the first 24 months of the long-term coverage requires that the participant be unable to "perform the material duties of [his] own occupation."   (Id. at 90.)   The plan also provides that a participant will be considered no longer disabled when he either does not meet the disability test (i.e., he can return to his own occupation) or when he is "no longer under the regular care of a physician" or the date the participant refuses to participate in an Aetna-requested medical examination.   (Id. at 38.)   The participant must establish that he is disabled within the meaning of the plan throughout the "elimination period," which is the first 26 weeks after the injury or illness. (Id. at 36, 66.)

In June 2019, Phillips' treating neurosurgeon, Dr. Richard Bucholz, cleared Phillips to return to work as of June 24, 2019.   (Id. at 378-79.)   Indeed, after a June 20, 2019, CT scan showed "complete resolution" of the subdural hematoma and hemorrhage, Phillips was discharged from the neurology clinic altogether.   (Id. at 369-70.)   Dr. Bucholz noted in another form dated July 17, 2019, that there were no "symptoms/functional impairments that would prevent [Phillips] from returning to work."   (Id. at 377.)   In a conversation with an Aetna representative in late September 2019, Phillips conceded that he had not

---

[1] The parties agree that the Court's review is limited to the administrative record.

been under the care of any physician since his last neurologist appointment at the end of June.

After receiving Aetna's decision denying his application (<u>id.</u> at 466-69), Phillips sought additional medical treatment.  The family-medicine physician who examined Phillips on October 29, 2019, opined that Phillips could not return to his previous employment because of cognitive impairment, memory loss, and other issues.   (<u>Id.</u> at 355.) Aetna then requested that Phillips undergo the neuropsychological testing that this physician recommended.   But despite mailing Phillips a letter about the scheduled test and attempting to reach him at least three times by phone, Phillips did not attend the test, nor did he respond to Aetna's contacts.   Aetna once again denied Phillips's benefits application.   (<u>Id.</u> at 513-15.)

Phillips appealed, sending Aetna a letter from the family-medicine physician who examined him in October 2019.   (<u>Id.</u> at 151.)   This letter noted that the physician had examined Phillips twice, and recommended neuropsychological testing to measure the extent of Phillips's impairment.   (<u>Id.</u>)   The physician had not performed nor ordered such testing, however.   Phillips also submitted records from a July 2020 office visit with a neurologist.   (<u>Id.</u> at 123-30.)   The neurologist noted that Phillips denied difficulty with routine daily activities and that, although he complained about headaches, those usually resolved with over-the-counter medication and rest.   (<u>Id.</u> at 124.)   She ordered a brain MRI (<u>id.</u> at 129) but there is no indication that Phillips had such a test.   Indeed, as Aetna

points out, Phillips has not had an MRI or other evaluation even after instituting this lawsuit. The neurologist also recommended a neuropsychological evaluation if Phillips experienced "worsening cognition," but did not perform that evaluation. (Id. at 129.)

Aetna's independent medical reviewer examined Phillips's medical records and spoke with Dr. Bucholz's office. (Id. at 529-36.) He concluded that the medical records did not support Phillips's claim of severe cognitive impairment. (Id. at 534-35.) Aetna thereafter denied Phillips's appeal. (Id. at 536-38.) This litigation ensued.

**DISCUSSION**

Phillips raises a single claim under Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. "[A] denial of benefits challenged under [ERISA] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the plan vests the administrator or fiduciary with such authority, the Court instead applies a deferential abuse-of-discretion standard. Id. The parties agree that the de novo standard applies here.

"Under a de novo standard of review, the Court must make an independent decision about benefits, affording no deference to the plan administrator's decision." Kaminski v. UNUM Life Ins. Co. of Am., 517 F. Supp. 3d 825, 858 (D. Minn. 2021) (Nelson, J.). Because the Court is the finder of fact, it "reviews the entire record available to the plan

administrator at the time of the adverse decision, but does not give any deference to the administrator's determination." Johnson v. G & K Servs., Inc. Long Term Disability Plan, No. 15cv3789, 2017 WL 9274764, at *5 (D. Minn. Sept. 27, 2017) (Menendez, M.J.). It is Phillips's burden to "establish disability by a preponderance of the evidence within the meaning of the governing plan." Johnson v. G&K Servs., Inc., No. 15cv3789, 2017 WL 6021292, at *2 (D. Minn. Dec. 5, 2017) (Wright, J., adopting R. & R. of Menendez, M.J.).

As Phillips seems to recognize, the record evidence supporting his claimed disability is very thin. He points to the opinion of the family-medicine physician he started seeing more than seven months after the injury, emphasizing that this physician noted his difficulties with memory and concentration. But both that doctor and the neurologist Phillips saw in July 2020 recommended neuropsychological testing that could confirm Phillips's claimed deficits. He has never undergone such testing.

Indeed, it was proper for Aetna to deny benefits based solely on Phillips's refusal to undergo the neuropsychological exam Aetna scheduled for him. Phillips now claims that he did not receive Aetna's letter, but Aetna also tried to reach him by phone three times. His contention that he did not know about the exam is simply not credible. Nor is his new contention that he was afraid to participate in such an exam during Covid. The exam was scheduled for February 21, 2020, several weeks before the stay-home orders Phillips now cites as an excuse for his failure to attend. And even had the exam been scheduled during the pandemic, the medical community quickly determined how to conduct necessary tests

safely.   Phillips's new contentions do not square with his initial claim that he did not know about the scheduled exam in the first instance.

Phillips also argues that Dr. Bucholz's statement that he could return to work as of June 24, 2019, was somehow a "mistake" on the doctor's part.   But Phillips could have secured an affidavit or other document from Dr. Bucholz in this regard.   The absence of any such document in the record tends to show that Dr. Bucholz correctly believed that Phillips's injuries, both physical and neurological, had improved enough by the end of June to allow him to return to work without restrictions.

Phillips seems to realize the uphill climb he faces here, "recogniz[ing] that the majority of caselaw" holds that a physician's release of a patient to work, when there are no other contrary medical opinions, means that the insurer's denial of coverage is reasonable.   (Pl.'s Opp'n Mem (Docket No. 31) at 2.)   His only contrary argument is that he "believes that the nature of his injury and subsequent treatment notes made his case different because it is obvious that he has been experiencing cognitive decline since the day of his injury."   (Id.)   Phillips's "belief" is irrelevant.   Aetna was required to examine the objective evidence in the record to determine whether he met the plan's definition of disabled during the elimination period.   It did so, and properly determined that the objective evidence did not support Phillips's claimed impairments.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1.      Defendant's Motion for Summary Judgment (Docket No. 25) is **GRANTED**; and

2.      Plaintiff's Motion for Summary Judgment (Docket No. 21) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   <u>Monday, November 22, 2021</u>        <u>*s/ Paul A. Magnuson*</u>
                                                                      Paul A. Magnuson
                                                                      United States District Court Judge

7